# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| JOHNNA K. NEWTON, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br> )<br> )<br>MICHAEL J. ASTRUE, )<br> Commissioner of Social Security, )<br>    Defendant. ) | Civil Action No. 2:09cv00046<br>**REPORT AND<br>RECOMMENDATION**<br><br>By:   PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE |

*I. Background and Standard of Review*

Plaintiff, Johnna K. Newton, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2009). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Newton protectively filed her application for SSI on August 22, 2006, alleging disability as of May 20, 1994, based on anxiety, major depression and bipolar disorder. (Record, ("R."), at 9, 146-48, 179.) The claim was denied initially and upon reconsideration. (R. at 86-90, 91, 93-94.) Newton then requested a hearing before an administrative law judge, ("ALJ"). (R. at 95.) The ALJ held a hearing on June 18, 2008, at which Newton was represented by counsel. (R. at 20-80.)

By decision dated September 3, 2008, the ALJ denied Newton's claim. (R. at 9-19.) The ALJ found that Newton had not engaged in any substantial gainful activity since August 22, 2006. (R. at 11.) The ALJ found that the medical evidence established that Newton had severe impairments, namely mood disorder with symptoms of depression, anxiety and major depressive disorder, but he found that Newton's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 11-14.) The ALJ also found that Newton had the residual functional capacity to perform simple, unskilled work at all exertional levels that did not require an ability to understand, remember and carry out more than simple job instructions. (R. at 14-17.) The ALJ found that Newton had no past relevant work. (R. at 17.) Based on Newton's age, education, lack of work history and residual functional capacity and the testimony of

a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Newton could perform, including jobs as a food preparer, a dishwasher, a laundry worker, a production helper and a machine feeder. (R. at 17-18.) Thus, the ALJ found that Newton was not under a disability as defined under the Act and was not eligible for benefits. (R. at 18-19.) *See* 20 C.F.R. § 416.920(g) (2009).

After the ALJ issued his decision, Newton pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 1-5, 144.) Newton then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2009). The case is before this court on Newton's motion for summary judgment filed on December 16, 2009, and the Commissioner's motion for summary judgment filed February 16, 2010.

*II. Facts and Analysis*

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2009); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2009).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2009); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Newton argues that substantial evidence does not support the ALJ's finding as to her residual functional capacity. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 8-13.) In particular, Newton argues that substantial evidence does not support the ALJ's finding that the only mental limitations placed on her work-related abilities were that she perform simple, unskilled jobs that do not require the ability to understand, remember and carry out more than simple job instructions. (Plaintiff's Brief at 8-13.) Based on my review of the record, I find that substantial evidence supports the ALJ's finding.

In rendering his decision, the ALJ reviewed records from Six County, Inc.; Wise County Behavioral Healthcare; Donna Abbott, M.A., a licensed senior psychological examiner; and Richard J. Milan Jr., Ph.D., a state agency psychologist. The record reveals that Newton has sought mental health treatment since at least 1999 for symptoms such as paranoia, racing thoughts, concentration problems, uncontrollable rages, family stressors, marital problems, insomnia, mood instability, low energy, social withdrawal, anxiety, panic attacks, low self-esteem and irritability.

(R. at 241-71, 301-347, 366-81, 397-460.) Newton has been consistently diagnosed as suffering from a depressive disorder, at times major, an anxiety disorder, panic disorder without agoraphobia, adjustment disorder with mania and depression, obsessive compulsive disorder, probable personality disorder and possible bipolar disorder. (R. at 318, 325, 404, 435, 443.) The record reveals that during much of the relevant time period, August 2006 through September 2008, Newton did well on various medications. (R. at 301-47, 366-81.) Beginning in January 2008, however, Newton reported that she had begun experiencing "out of body" experiences, feeling a vibration or electrical shock running through her body and hearing voices. (R. at 383-85, 387-92.)

During the relevant time period, Newton was treated at Wise County Behavioral Healthcare by her case manager, Vonda Green, R.N., counselors, James Kegley and Deborah Hibbitts, Joyce Thompson, F.N.P., and staff psychiatrists Dr. Randall E. Pitone, M.D., Dr. Jennifer Wisdom-Scheper, M.D., Dr. Rhonda K. Bass, M.D., and Dr. Ali Garatli, M.D. None of the records from any of these visits contains any limitations on Newton's work-related abilities. The record before the ALJ did contain an undated Medical Assessment Of Ability To Do Work-Related Activities (Mental) completed by Green. (R. at 394-95.) On this mental assessment, Green noted that she was unable to evaluate Newton's abilities in a work setting. (R. at 394.) The assessment also stated that Newton's abilities were seriously limited, but not precluded, in making all occupational, performance and personal-social adjustments except for a satisfactory ability to understand, remember and carry out simple job instructions, a satisfactory ability to maintain personal appearance and no useful ability to deal with work stresses. (R. at 394-95.)

Donna Abbott, M.A., a licensed senior psychological examiner, completed a consultative evaluation of Newton on October 30, 2006. (R. at 274-80.) Abbott noted that Newton appeared clean and neat. (R. at 274.) Newton reported that she was prescribed Cymbalta and Seroquel for complaints of depression, anxiety and insomnia. (R. at 275.) Abbott noted that Newton was oriented and appeared to be able to attend and concentrate without difficulty. (R. at 276.) Newton's affect was slightly dysthymic, and she denied any visual or auditory hallucinations. (R. at 276.) Newton reported that her depression and nervousness had been stable over the past two years. (R. at 277.) She stated that the Seroquel made her feel better and helped her sleep better. (R. at 277.)

Abbott diagnosed Newton as suffering from dysthymic disorder, late onset, rule out major depressive disorder, in remission. (R. at 278.) Abbott placed Newton's Global Assessment of Functioning, ("GAF"), score at 65.[1] (R. at 278.) Abbott estimated Newton's intellectual functioning as average. (R. at 278.) Abbott stated that Newton could understand and remember, attend and concentrate and follow directions. (R. at 278.) Abbott stated that Newton's general adaptation skills were fair and that she should be able to work in proximity to others. (R. at 278,) Abbott did state that Newton might have some difficulty dealing with stress. (R. at 278.) Abbott noted that with continued treatment, Newton's condition should continue to improve. (R. at 280.)

---

[1]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

On November 17, 2006, Richard J. Milan, Jr., Ph.D., a state agency psychologist, completed a Mental Residual Functional Capacity Assessment of Newton. (R. at 283-84.) Milan stated that Newton had a moderately limited ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to make simple work-related decisions, to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 283-84.) In all other areas, Milan stated that Newton's abilities were not significantly limited. (R. at 283-84.)

Milan stated that Newton could understand, retain and follow simple job instructions, perform one- or two-step tasks, maintain concentration and attention for extended periods of time with no more than occasional disruptions, maintain regular attendance and be punctual, complete a normal workday and workweek without exacerbation of psychological symptoms, maintain socially acceptable behavior, ask simple questions and accept instructions, get along with others in the workplace without distracting them and exercise appropriate judgment. (R. at 285.) Milan further stated that Newton was capable of the basic mental demands of competitive work on a sustained basis. (R. at 285.) Milan also completed a Psychiatric Review Technique form, ("PRTF"), stating that Newton suffered from an affective disorder which caused mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 286-99.)

Newton's counsel also submitted a Mental Residual Functional Capacity

Questionnaire completed by Green on October 24, 2008, to the Appeals Council.[2] (R. at 442-47.) In this questionnaire, Green again stated that she had been unable to evaluate Newton in a work setting. (R. at 445.) Green stated that in the office Newton appeared to understand and remember instructions, but had problems coping with stress and isolated herself at time. (R. at 445.) Green stated that Newton had a seriously limited, but not precluded, ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, to deal with normal work stresses and to deal with the stress of semiskilled or skilled work. (R. at 445-46.) Green did not complete much of the form.

In determining whether substantial evidence supports the Commissioner's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings. A review of the ALJ's opinion shows that he reviewed all of the psychological evidence of record

---

[2]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-5), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

and adequately explained his reasoning for finding Abbott's opinions to be more persuasive than those of Green. In particular, the ALJ found that Green's assessment was entitled to very limited weight because it was not supported by acceptable clinical findings, nor was it consistent with the other substantial evidence of record. The record supports those findings. There are few, if any, clinical findings recorded in this record to indicate that Newton could not perform simple, unskilled work that did not require the ability to understand, remember and carry out more than simple job instructions. In fact, Abbott, Milan and Green all opined that Newton could understand, remember and carry out simple job instructions.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's weighing of the evidence and findings with regard to Newton's mental residual functional capacity; and

2. Substantial evidence exists to support the ALJ's finding that Newton was not disabled under the Act.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Newton's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2009):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 14th day of May 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE